**Laurence J. TERRAZAS, Plaintiff,**

v.

**Edmund S. MUSKIE, Secretary of State, Defendant.**

**No. 75 C 2370.**

United States District Court, N. D. Illinois, E. D.

Aug. 12, 1980.

Ditkowsky & Contorer, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

*Petition for Judgment*

MAROVITZ, District Judge.

Plaintiff originally commenced this action against defendant United States Secretary of State under 8 U.S.C. § 1503(a) seeking a reversal of an administrative determination that, pursuant to 8 U.S.C. § 1481, plaintiff had relinquished his United States citizenship. The course taken thereafter by this

litigation has included a trial *de novo* in this Court, with a judgment entered in favor of defendant, *Terrazas v. Vance*, No. 75–2370 (N.D.Ill., Aug. 16, 1977) (hereinafter cited as Memorandum Opinion), a reversal of this Court by the Seventh Circuit Court of Appeals on the ground that the evidentiary standards prescribed by Congress in 8 U.S.C. § 1481 abridged the Fourteenth Amendment, *Terrazas v. Vance*, 577 F.2d 7 (7th Cir.1978), and a reversal of the Seventh Circuit's holding by the Supreme Court. *Vance v. Terrazas*, 444 U.S. 252, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980). Now, pursuant to successive remands by the Supreme Court and the Seventh Circuit, this matter is again before this Court.

Pending before the Court is plaintiff's petition for judgment. To summarize plaintiff's petition, he contends that the evidence presented at the trial of this action does not support a finding that plaintiff ever intended to relinquish his citizenship, intent being a requisite element of the loss of one's citizenship. *Id.* at 260–261, 100 S.Ct. at 545. Defendant has filed a response in opposition to plaintiff's motion. For the reasons set forth below, the Court denies plaintiff's petition and affirms the judgment it entered earlier in this matter.

Because the facts leading up to the commencement of this action may be easily culled from the earlier opinions rendered in this case, the Court will not repeat them here. *See id.; Vance v. Terrazas*, 577 F.2d 7; Memorandum Opinion. However, since an understanding of the previous rulings in this case is helpful to an understanding of the Court's disposition today, the Court will more fully explain those rulings.

■ This Court's memorandum opinion issued in conjunction with its findings of fact and conclusions of law explained that, in this Court's opinion, the relevant body of law in this sort of action is 8 U.S.C. § 1481 and the Fourteenth Amendment, as interpreted by the Supreme Court in *Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967). 8 U.S.C. § 1481(a) sets forth certain acts, including taking an oath of allegiance to a foreign state, which are deemed acts of expatriation. 8 U.S.C. § 1481(c) provides, in pertinent part, that:

Whenever the loss of United States nationality is put in issue . . . the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence. Except as otherwise provided in subsection (b), any person who commits or performs, or has committed or preformed, any act of expatriation under the provisions of this or any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

*Afroyim* stands for the proposition, *inter alia*, that while Congress may generally prescribe the evidentiary standards which shall obtain in expatriation proceedings, no person's citizenship may be destroyed absent a finding that he intended to relinquish his citizenship. *Afroyim v. Rusk*, 387 U.S. at 268, 87 S.Ct. at 1668. Thus, an act of expatriation is not in and of itself sufficient to destroy one's citizenship. *Vance v. Terrazas*, 444 U.S. at 261–262, 100 S.Ct. at 545.

Applying the above law to the Court's evaluation of the evidence presented at trial, it concluded both that plaintiff had voluntarily committed an act of expatriation within the meaning of section 1481 and that plaintiff had voluntarily relinquished his citizenship. Without thoroughly recounting the Court's evaluation of the evidence, *see* Memorandum Opinion, the Court simply notes that the evidence relied upon by the Court included the fact that plaintiff took an oath of allegiance to Mexico in 1971 which included language renunciating his United States citizenship, plaintiff's course of conduct during 1970–71 indicated an intention to make Mexico his permanent home, plaintiff sought to avoid certain obligations of United States citizenship, and that at the relevant time plaintiff was a literate and mature individual.

Among the specific findings and conclusions of the Court, were that: "(1) Lau-

rence J. Terrazas' words and conduct show that he knowingly and voluntarily took the Mexican oath of allegiance *and* renounced allegiance to the United States," Memorandum Opinion at 12 (emphasis added); "(2) Laurence J. Terrazas actively and voluntarily sought the issuance of a Certificate of Loss of United States citizenship;" *id.*; "(3) Defendant has proved by a preponderance of the evidence that Laurence J. Terrazas knowingly, understandingly and voluntarily took an oath of allegiance to Mexico, *and concurrently* renounced allegiance to the United States;" *id.* (emphasis added); and "(4) Laurence J. Terrazas voluntarily relinquished United States citizenship pursuant to § 349(a)(2) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1481(a)(2)."[1] *Id.* Hence, the Court entered judgment for defendant.

On appeal to the Seventh Circuit, plaintiff challenged the constitutional validity of section 1481(c)'s preponderance of the evidence standard of proof. More specifically, plaintiff asserted that the Government must establish the elements of a loss of citizenship by clear and convincing proof. The Seventh Circuit agreed, reasoning that the loss of one's citizenship is such a serious loss that the clear and convincing standard is constitutionally mandated. Accordingly, the Seventh Circuit ruled section 1481(c) to be invalid.

The Seventh Circuit, however, did not overturn any of this Court's factual findings, and noted that under the evidentiary standard prescribed by section 1481(c) this Court's ultimate conclusion was correctly reached. *Id.* at 10. Moreover, in connection with its remand instructions, the Seventh Circuit intimated that the evidence might support a judgment in defendant's favor even in light of the stricter standard of proof which the Seventh Circuit sought to require. *Id.* at 12.

Before this Court could rule on the evidence pursuant to the Seventh Circuit's remand, the Supreme Court reversed the Seventh Circuit's holding that section 1481(c) was unconstitutional, affirming Congress's prerogative to legislate a preponderance of the evidence standard of proof. *Vance v. Terrazas,* 444 U.S. at 264–267, 100 S.Ct. at 547–48. That portion of the Supreme Court's opinion which prompted plaintiff's instant petition for judgment was occasioned by the Government's assertion before the Supreme Court, apparently for the first time during the course of this litigation, that the Government need not establish an intent to relinquish citizenship in order to destroy one's citizenship, only that one of section 1481's enumerated acts has been committed. *Id.* at 256–257, 100 S.Ct. at 543. The Supreme Court rejected that argument, holding that while the acts of expatriation specified in section 1481(a) may be highly persuasive on the question of intent, acts of expatriation neither are conclusive evidence of an intent to relinquish citizenship nor raise a presumption of an intent to relinquish.[2] *Id.* at 264–267, 100 S.Ct. at 547, 548. In short, the Supreme Court made it clear that it is the Government's burden to establish by a preponderance of the evidence both that an intent to expatriate was manifested, as well as that an act of expatriation was committed. *Id.* at 268, 100 S.Ct. at 549.

As stated, plaintiff contends that the evidence does not support a finding that he intentionally relinquished his citizenship. Plaintiff's argument, however, will simply not withstand analysis. First, neither the Supreme Court nor the Seventh Circuit, while both recognized that an intent to relinquish citizenship is a requisite element of the withdrawal of citizenship, in any way

1. The Court's Memorandum Opinion on page 12 twice cites section 349(a)(2) of the Act as 8 U.S.C. § 1841(a)(2). The Court of course intended to cite section 1481(a)(2). Pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, the Court hereby amends its Memorandum Opinion so that the references to "8 U.S.C. § 1841(a)(2)" be amended to read "8 U.S.C. § 1481(a)(2)."

2. The burden-shifting presumption raised by section 1481(c) upon a showing of an act of expatriation is that the act was voluntarily committed, as opposed to that by the commission of the act one is presumed to have intended to relinquish his citizenship. *Vance v. Terrazas,* 444 U.S. at 265, 100 S.Ct. at 548.

suggested that this Court did not find such intent on plaintiff's part. On the contrary, the opinions of those courts suggest that this Court did properly find the requisite intent. *Id.* at 254–255, 100 S.Ct. at 542; *Vance v.Terrazas,* 577 F.2d at 10.

Second, a careful reading of this Court's memorandum opinion clearly belies plaintiff's contention. The findings and conclusions of this Court which are set out in full *supra* indicate that the Court distinctly found that plaintiff had knowingly and voluntarily performed an act of expatriation within the meaning of section 1481(a)(*i.e.,* took an oath of allegiance to Mexico) *and* renounced allegiance to the United States. While the Court is not unmindful of the slight semantical difference between a finding that plaintiff voluntarily renounced allegiance to the United States and a finding that he intentionally relinquished his citizenship, the Court intended the latter finding to be fully encompassed within the former. Indeed, much of the Court's discussion in its Memorandum Opinion was devoted to an explanation of how the evidence presented at trial established an intent by plaintiff to surrender his citizenship. The Court's painstaking review of the evidence presented in this case only affirms its conclusion that plaintiff intended to abandon his United States citizenship.

 Plaintiff argues that the fact that he has now for several years fought to retain his citizenship is persuasive evidence of his lack of an intention to ever abandon his citizenship. The relevant inquiry, however, is plaintiff's state of mind during 1970–71, and, therefore, plaintiff's argument misses the point. Rather, plaintiff's struggle to retain his citizenship is likely evidence of his realization of the gravity of his earlier decision to relinquish his citizenship.

Finally, the Court pauses to comment that it does not at all view lightly the loss of one's United States citizenship or mean to imply that it may be easily lost. In a

world where the value of most commodities is subject to ever-rapid fluctuation, United States citizenship remains a priceless commodity. United States citizenship confers a bundle of rights which often serve to insulate the holders thereof from the inhumanity which today reigns in much of the world. In return, the Government demands only that "they who live under its protection should demean themselves as good citizens in giving it on all occasions their effectual support." Letter from George Washington to Jewish Congregation of Newport, Rhode Island (1790).

On many occasions, this Court has had the privilege of conducting naturalization ceremonies for persons totaling over the years in the thousands. To be sure, the task the Court performed on those occasions was infinitely more pleasurable than the one it is obliged to perform in this case. However, the evidence in this case that plaintiff intentionally abandoned his United States citizenship is clear, convincing, and nearly overwhelming. The Court thought as much in 1977 and does so today. Accordingly, the Court hereby denies plaintiff's petition and affirms its earlier award of judgment in favor of defendant.[3]

---

**3.** It is the Court's understanding of the Seventh Circuit's disposition in this matter that this Court's award of judgment to defendant was never vacated and therefore remains intact. In the event the Court's understanding is in error, it hereby orders the Clerk of the Court to enter final judgment in defendant's favor.