Laurence J. TERRAZAS,
Plaintiff-Appellant,

v.

Alexander M. HAIG,* Secretary of State,
Defendant-Appellee.

No. 80–2292.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1981.

Decided June 30, 1981.

Kenneth K. Ditkowsky, Chicago, Ill., for plaintiff-appellant.

Michael S. O'Connell, Asst. U.S. Atty., Frederick H. Branding, Asst. U.S. Atty., Chief, Civil Div., Chicago, Ill., for defendant-appellee.

Before SWYGERT and SPRECHER, Circuit Judges, and LARSON, Senior District Judge.**

PER CURIAM.

Plaintiff, Laurence J. Terrazas, appeals from the district court's judgment, *Terrazas v. Muskie*, 494 F.Supp. 1017 (N.D.Ill.1980), that, pursuant to 8 U.S.C. § 1481, plaintiff has relinquished his United States citizenship. The sole issue on appeal is whether the district court properly found that plain-

---

\* On January 21, 1981, Alexander M. Haig was sworn in as Secretary of State. Pursuant to Rule 43(c) of the Federal Rules of Appellate Procedure, Alexander M. Haig was substituted as a party defendant in his official capacity for defendant Edmund S. Muskie.

\*\* Honorable Earl R. Larson, Senior District Judge for the District of Minnesota, is sitting by designation.

tiff *specifically intended* to relinquish his United States citizenship. After reviewing the extensive record in this case and the earlier opinions of this Court, *Terrazas v. Vance,* 577 F.2d 7 (7th Cir. 1978), and of the United States Supreme Court, *Vance v. Terrazas,* 444 U.S. 252, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980), we affirm the district court's judgment.

### I

The facts of this case are set forth in some detail in our earlier opinion, *Terrazas v. Vance,* 577 F.2d at 7–9, and in the Supreme Court's opinion, *Vance v. Terrazas,* 444 U.S. at 255–58, 100 S.Ct. at 542–43. Plaintiff acquired dual Mexican and United States citizenship by birth in the United States, his mother being a United States citizen and his father being a Mexican citizen. Plaintiff has resided for most of his life in the Chicago, Illinois area. From 1968 through 1971, however, plaintiff was a student at the Colegio Comercial Ingles in Monterrey, Mexico.

During September, 1970, while in Chicago for a Selective Service physical examination, plaintiff executed an Application for a Certificate of Mexican Nationality. The application, printed in Spanish, contained an oath, which as translated, "expressly renounce[d] United States citizenship, as well as any submission, obedience, and loyalty to any foreign government, especially to that of the United States of America...."[1] Plaintiff also swore "adherence, obedience, and submission to the laws and authorities of the Mexican Republic." A Certificate of Mexican Nationality was issued to plaintiff by the Mexican government on April 3, 1971. The certificate expressly recited plaintiff's oath of loyalty to Mexico and his renunciation of any other claim of citizenship.

In August, 1971, plaintiff commenced proceedings through the United States Consulate in Monterrey, Mexico, to determine whether his acquisition of a Certificate of Mexican Nationality affected his United States citizenship. The State Department issued a Certificate of Loss of Nationality in December, 1971. On April 29, 1975, the Board of Appellate Review of the State Department, after a full hearing, held that, pursuant to 8 U.S.C. § 1481(a)(2),[2] plaintiff had voluntarily committed an expatriating act with a specific intent to relinquish his United States citizenship.

Pursuant to 8 U.S.C. § 1503(a), plaintiff brought this suit against the Secretary of State seeking a declaration of his United States citizenship. A four day trial de novo was held by the district court. The district court's Memorandum Decision, *Terrazas v. Vance,* No. 75 C 2370, slip op. at 11–12 (N.D.Ill. Aug. 16, 1977) ("Memorandum Decision"), held that plaintiff had "knowingly and understandingly renounced allegiance to the United States in connection with his Application for a Certificate of Mexican Nationality," and that the government "has proved by a preponderance of the evidence that Laurence J. Terrazas knowingly, understandingly and voluntarily took an oath of allegiance to Mexico, and concurrently renounced allegiance to the United States." In the discussion accompanying the findings of fact and conclusions of law, the district court agreed with and cited *United States v. Matheson,* 400 F.Supp. 1241, 1245 (S.D.N.Y. 1975), *aff'd,* 532 F.2d 809 (2nd Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976), that "the declaration of allegiance to a foreign state in conjunction with the renunciatory language of United States citizenship 'would leave no room for ambiguity as to the intent of the applicant.'" Mem. Dec. at 6.

---

**1.** Plaintiff testified that when he signed the application, the form contained blanks where the words "United States" later were filled in. Plaintiff also testified that he was unaware that he was renouncing his United States citizenship and that he executed the blank form because his overbearing father instructed him to do so.

**2.** 8 U.S.C. § 1481 states in relevant part:

(a)[A] person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—

(2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof; ....

The district court, therefore, concluded that plaintiff was not entitled to issuance of a United States passport.

On appeal to this court, we reversed the district court's judgment solely on the basis that the burden of proof standard in 8 U.S.C. § 1481(c), which required the government to establish plaintiff's voluntary commission of an expatriating act by a "preponderance of the evidence," violated plaintiff's constitutional rights under the Fourteenth Amendment. The court held that the appropriate standard should be · proof by "clear, convincing and unequivocal evidence." *Terrazas v. Vance*, 577 F.2d at 12. In reviewing the district court's decision, however, the court stated that "[a]ssuming that the proper [burden of proof] standards were applied, we are convinced the record fully supports the court's findings." 577 F.2d at 10.

The Seventh Circuit's holding was reversed by the United States Supreme Court. *Vance v. Terrazas*, 444 U.S. 252, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980). The Supreme Court ruled that Congress constitutionally could prescribe a preponderance of the evidence burden of proof standard for expatriation proceedings. The Court also addressed the government's assertion, raised for the first time before the Supreme Court, that, in expatriation proceedings under 8 U.S.C. § 1481, the government need not prove plaintiff's specific intent to renounce his United States citizenship, but need only prove the voluntary commission of an expatriating act. The Court rejected the government's argument and concluded that "the trier of fact must in the end conclude that the citizen not only voluntarily committed the expatriating act prescribed in the statute, but also intended to relinquish his citizenship." 444 U.S. at 261, 100 S.Ct. at 545.

Upon remand to the district court, that court entered an opinion denying plaintiff's petition and affirming its earlier judgment in favor of defendant. The district court noted that neither the Court of Appeals nor the Supreme Court suggested that the district court in its initial decision had not properly found that plaintiff intended to relinquish his United States citizenship. The district court referred to its earlier findings of fact and conclusions of law and explained that the finding that plaintiff had knowingly and voluntarily renounced his United States citizenship was intended to encompass a finding that plaintiff intentionally relinquished his citizenship. *Terrazas v. Muskie*, 494 F.Supp. at 1020. The court concluded that "the evidence in this case that plaintiff intentionally abandoned his United States citizenship is clear, convincing, and nearly overwhelming." *Id.*

## II

■ Plaintiff argues that there is insufficient evidence that, at the time he obtained a Certificate of Mexican Nationality, he intended to relinquish his United States citizenship.[3] We, however, are convinced that in the 1977 proceedings the district court fully considered the issue of plaintiff's intent and properly found that a preponderance of the evidence supported the conclusion that plaintiff intended to relinquish his citizenship when he voluntarily committed the expatriating act.

First, the district court's Memorandum Decision reveals that the court was aware of the need to establish plaintiff's intent at the time he committed the voluntary expatriating act. The court relied in part upon the decisions in *Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967) and *United States v. Matheson*, 400 F.Supp. 1241 (S.D.N.Y. 1975), *aff'd*, 532 F.2d 809 (2nd Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 185 (1976), both of which explicitly describe the government's

---

**3.** Plaintiff also argues that the district court erred by not holding further evidentiary hearings in order to allow plaintiff an opportunity to present evidence regarding his intent. We find no error in the district court's proceedings. First, we are convinced that in the initial proceeding the district court properly and fully considered plaintiff's intent to relinquish his citizenship. Second, plaintiff fails to suggest what new, material evidence regarding his intent he would proffer at a new hearing.

burden of establishing intent to relinquish citizenship along with proof of the voluntary commission of an expatriating act. In addition, the arguments of counsel before the district court and the opinion of the State Department's Board of Appellate Review clearly addressed the question of plaintiff's intent to relinquish citizenship. Consequently, we are persuaded that the issue of plaintiff's intent was fully litigated in the prior proceedings and is not a novel issue stemming from the Supreme Court opinion in this case.

Second, although the word "intent" is not used, the district court's findings and conclusions are comprehensive enough to include a finding that plaintiff "intended" to relinquish his United States citizenship. The court found that plaintiff "knowingly, understandingly and voluntarily" committed an expatriating act and "knowingly and understandingly" renounced his United States citizenship. Plaintiff's knowing and understanding taking of an oath of allegiance to Mexico and an explicit renunciation of his United States citizenship is a sufficient finding that plaintiff intended to relinquish his citizenship.

In our prior opinion, this court determined that if the proper burden of proof standard is merely a preponderance of the evidence, then the record fully supports the district court's findings. *Terrazas v. Vance*, 577 F.2d at 10. We find no reason to depart from our earlier assessment. Also, the Supreme Court stated that the district court found by a preponderance of the evidence *both* elements necessary for expatriation under 8 U.S.C. § 1481—a voluntary expatriating act and an intent to relinquish citizenship. *Vance v. Terrazas*, 444 U.S. at 257, 100 S.Ct. at 543. The Supreme Court never suggested that the district court's findings were inadequate or erroneous.

In addition to relying upon our prior review and the Supreme Court's review of the district court's findings, we again have thoroughly reviewed the record and the district court's recent opinion and conclude that the government established by a preponderance of the evidence that, at the time plaintiff acquired the Certificate of Mexican Nationality, he specifically intended to relinquish his United States citizenship. Of course, a party's specific intent to relinquish his citizenship rarely will be established by direct evidence. But, circumstantial evidence surrounding the commission of a voluntary act of expatriation may establish the requisite intent to relinquish citizenship.[4] Here, there is abundant evidence that plaintiff intended to renounce his United States citizenship when he acquired the Certificate of Mexican Nationality willingly, knowingly, and voluntarily.

First, plaintiff was 22 years old, well-educated, and fluent in Spanish at the time he executed the Application for a Certificate of Mexican Nationality which contained an oath of allegiance to Mexico and the renunciation of United States citizenship. Even assuming plaintiff was only following the directions of his autocratic father when he executed the application, after receiving his Certificate of Mexican Nationality, plaintiff did nothing to reverse the process, even though he was no longer under the influence of his father.

Second, the timing of plaintiff's actions casts some doubts upon his motivation. Plaintiff executed the Application for a Certificate of Mexican Nationality just one week after taking and passing his Selective Service physical examination. He later approached the United States Consulate in Monterrey to inquire about his citizenship status only after his student and hardship deferments were withdrawn and he was classified 1–A by the Selective Service.

---

4. In *King v. Rogers*, 463 F.2d 1188, 1189 (9th Cir. 1972), the Ninth Circuit states that:

The Secretary [of State] may prove this subjective intent [to renounce citizenship] by evidence of an explicit renunciation, ... acts inconsistent with United States citizenship, ... or by "affirmative voluntary act[s] clear-

ly manifesting a decision to accept [foreign] nationality ...."

(citations and footnote omitted; first and second brackets supplied). *See also Vance v. Terrazas*, 444 U.S. at 261–62, 100 S.Ct. at 545–46.

Moreover, when informed by consulate officials that by acquiring the Certificate of Mexican Nationality plaintiff probably had expatriated himself, plaintiff immediately sought to inform his draft board in Chicago that he was no longer a citizen.

Finally, in conjunction with plaintiff's efforts to secure a State Department determination of his citizenship status, plaintiff executed a sworn affidavit stating that he had taken an oath of allegiance to Mexico and that it "was my free and voluntary act and that no influence, compulsion, force, or duress was exerted upon me by any other person, and that it was done with the intention of relinquishing my United States citizenship." Although other statements submitted by plaintiff to the State Department appear to contradict this statement, and other evidence presented by plaintiff casts some doubt upon his intent in securing a Certificate of Mexican Nationality, we cannot conclude that the district court improperly found that the government had established by a preponderance of the evidence that plaintiff intended to relinquish his United States citizenship.

The district court is in the best position to hear the testimony and to assess the credibility of witnesses, especially with regard to the self-serving testimony of plaintiff. We hold that the district court properly considered the issue of plaintiff's intent to relinquish his citizenship, fully assessed the competing testimony and evidence, and properly denied plaintiff relief.

### III

For the foregoing reasons, the judgment of the district court is affirmed.